# United States Court of Appeals
## For the First Circuit

No. 11-1646

UNITED STATES OF AMERICA,

Appellee,

v.

STEVEN SOTO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Howard, Circuit Judge,
Souter,[*] Associate Justice,
and Torresen,[**] District Judge.

Robert C. Andrews for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

June 24, 2013

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

[**]Of the District of Maine, sitting by designation.

      **TORRESEN**, <u>**District Judge**</u>.  After a jury trial, the appellant, Steven Soto, was convicted on all counts of a seventeen-count indictment charging mail fraud, wire fraud, bank fraud, and aggravated identity theft.[1] On appeal, Soto argues that the trial court violated his Sixth Amendment right to confront the witnesses against him by admitting testimony of a forensic examiner about another examiner's prior examination.  Soto also challenges the sufficiency of the government's evidence for his aggravated identity theft convictions. For the following reasons, we uphold Soto's convictions on all counts.

## I.  Sufficiency of the Evidence on the Aggravated Identity Theft Counts

### A. Factual Background

     We begin with Soto's second argument because it allows us to describe the fraudulent scheme behind all of the charges. Soto contends that there was insufficient evidence that he knew that the identification he fraudulently used to purchase four motorcycles actually belonged to another person.  Because Soto challenges the sufficiency of the government's proof at trial, we recite the facts in the light most favorable to the jury's verdict.  <u>United States</u> v. <u>Valerio</u>, 676 F.3d 237, 240-41 (1st Cir. 2012).

---

[1]  Counts one through four charged mail fraud in violation of 18 U.S.C. § 1341; counts five through seven charged wire fraud in violation of 18 U.S.C. § 1343; counts eight and nine charged bank fraud in violation of 18 U.S.C. § 1344; and counts ten through seventeen charged aggravated identity theft in violation of 18 U.S.C. § 1028A.

On March 27, 2006, Soto brought his girlfriend, Yessica Amaro, to Motorcycles of Manchester (MoM's) in New Hampshire. Soto purchased a 2003 Suzuki motorcycle for Amaro, who was posing as "Christine Escribano." Soto told the office manager at MoM's that he would bring Escribano's license when he came to pay and retrieve the motorcycle the next day. Although Soto neglected to produce Escribano's license, MoM's completed the sale in the name of Christine Escribano on March 28, 2006. On April 1, 2006, Soto and Amaro repeated the scheme at Kelly Power Sports in Danvers, Massachusetts. This time they produced Escribano's driver's license, which a salesperson photocopied, and they purchased another 2003 Suzuki motorcycle. On April 6, 2006, Soto and Amaro continued the charade at North Reading Motor Sports in North Reading, Massachusetts, once again using Escribano's driver's license to purchase two Honda motorcycles. The manager at North Reading Motor Sports made a photocopy of Escribano's license for his records.

Soto paid for the motorcycles with counterfeit cashier's checks, and the dealerships applied for title and registration for the motorcycles with the Massachusetts Registry of Motor Vehicles (RMV) in Escribano's name. Soto then sent counterfeit notarized affidavits[2] to the RMV, transferring the titles to the motorcycles

---

[2]    In order to create the counterfeit affidavits, Soto used the identity of Milagros Espinal, an actual notary public who had notarized documents for Soto in the past.

to either his uncle, Salvador Shower, or his friend, Abraham Dominguez.  Soto intercepted the "clean" titles issued by the RMV from the mail of Shower and Dominguez.  Once Soto had the titles, another friend posed as either Shower or Dominguez and sold the motorcycles to innocent third parties.

Christine Escribano testified that she had lost her driver's license, and she identified her license from the photocopy made by one of the motorcycle dealerships.

Soto also purchased three automobiles posing as Gregory Bradley, a friend of Soto's who was incarcerated at the time.  Soto produced Bradley's driver's license to buy the cars and to obtain financing for the car purchases.  Because Soto is not contesting the sufficiency of the evidence supporting the charges related to the car purchases, we need not describe this scheme in detail.

At the conclusion of the government's case-in-chief, Soto moved for a Rule 29 judgment of acquittal, arguing in relevant part that there was insufficient evidence that he knew that Escribano was a real person.  The district court orally denied the motion. Soto renewed the motion at the close of the evidence, and the district court again denied the motion.

**B.  Standard of Review and Relevant Law**

We review the district court's denial of a Rule 29 motion de novo.  Valerio, 676 F.3d at 243.  We must uphold the denial if, taking the evidence at trial in the light most favorable to the

-4-

jury's verdict, a rational factfinder could find that the government proved each essential element of the crime beyond a reasonable doubt. Id. at 244. Soto was convicted under 18 U.S.C. § 1028A, which states:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. §1028A(a)(1). Under this statute, the government was required to prove beyond a reasonable doubt that Soto knew that the means of identification that he used belonged to another person. Flores-Figueroa v. United States, 556 U.S. 646, 657 (2009). The government need not have direct evidence of knowledge; circumstantial evidence can be sufficient. Valerio, 676 F.3d at 244.

Soto argues that the evidence proved only that he possessed the license, not that he knew that the license was that of another person. Viewed cumulatively, the government's circumstantial evidence was sufficient for a rational jury to find beyond a reasonable doubt that Soto knew that the license belonged to another person.

First, the government introduced the photocopy of Escribano's license made by North Reading Motor Sports into evidence. The driver's license contains a banner with the word

"Massachusetts" and the state's silhouette and seal.  The license
has a number, date of birth, vehicle classification, height, sex,
address, and expiration date.  The license bears Escribano's
signature and contains two photographs -- one larger and the second
lighter and smaller, obviously some type of security feature.  The
license also bears the signature of the registrar running up the
left-hand side of the larger photograph.  The license bears a small
heart, designating an organ donor.  Nothing about the license
suggests it is counterfeit or fake.  A modern Massachusetts
driver's license is a sophisticated identification document with a
number of security features.  Unlike social security cards or birth
certificates -- printed on card stock or paper -- a Massachusetts
driver's license cannot be easily forged.  We believe that the
license alone provides strong evidence of its own authenticity.
Soto, himself a Massachusetts resident and driver, would have been
familiar with the features of an authentic Massachusetts driver's
license.

Second, Soto's willingness to use Escribano's license to
purchase expensive vehicles suggests that he knew that the document
was authentic.  Two of the dealerships actually copied the license
for their files.  The fact that Soto knew that the license might be
subjected to scrutiny by the dealerships supports the inference
that he knew that the license belonged to a real person.  See
Valerio, 676 F.3d at 244-45 (defendant's willingness to subject

-6-

means of identification to government scrutiny evidence of defendant's knowledge).

Finally, the government produced evidence at trial that all of the other people who Soto involved in his schemes were real people. Soto forged the notary stamp from a notary he previously used; he assigned titles to his uncle and his friend; he purchased automobiles using his friend Gregory Bradley's identity. The jury could have reasonably inferred that Soto's <u>modus operandi</u> was to involve people whom he knew to be real.

The government produced evidence beyond the mere possession of Escribano's license. Cumulatively, the evidence was sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that Soto knew Escribano's license actually belonged to another person. We affirm the district court's denial of Soto's Rule 29 motion.

## II. The Crawford Challenge

### A. Procedural Background

The day before trial, Soto moved to suppress incriminating evidence found on a laptop computer seized in an inventory search of one of the automobiles Soto purchased using Bradley's identity. Soto argued in his motion that the seizure violated his Fourth Amendment rights. The district court held a hearing and denied the motion.

At trial, Special Agent Michael Pickett of the United

-7-

States Secret Service testified about a computer forensics examination he had conducted on the seized laptop. Agent Pickett first testified generally about how a forensics examination is conducted and then identified Exhibit 30 as the hard drive removed from the laptop. Agent Pickett explained that another forensics examiner, John Murphy, had done a forensics examination before him. Agent Pickett testified: "I took the hard drive out of this laptop, I made my own image and I examined the image of the hard drive and I confirmed that everything that was in John Murphy's report was exactly the way he said it was."

Agent Pickett identified Exhibit 20, which consisted of several documents that were found on the hard drive of the laptop,[3] and he testified:

> PROSECUTOR: After you made an image of the hard drive from Exhibit 30, the laptop computer, were you able to print out certain documents that appear on the hard drive?
> AGENT PICKETT: I did not make a hard copy printout; however, I used the forensic program called EnCase to find this document, and it was contained in the same folder that John Murphy had said that he had found it in.
> PROSECUTOR: So am I correct in understanding that each of the pieces of paper in Exhibit 20 are hard

---

[3] The documents were: (1) a welcome email from Expedia.com to biznsmen@hotmail.com with login information for member ID SSoto2006, (2) a 2005 W-2 and earnings summary for Carmen L. Soto, (3) a 2005 W-2 and earnings summary for Gregory Bradley, (4) a Comcast past due balance notice addressed to Gregory Bradley, (5) a W-2 wage and tax statement from CMJ Management Co. for Gregory Bradley, (6) a Paradise Real Estate pay stub for Gregory Bradley, and (7) a Paradise Real Estate pay stub for Manuel Shower.

> copies of stuff you confirmed were in the hard
> drive that was in Exhibit 30?
> AGENT PICKETT: Yes.  I saw this document, this
> file, looking in EnCase and confirmed that it was
> on the image of the hard drive that I made.

The government then offered Exhibit 20, and Soto's counsel stated:

"Judge, for the record I have to object pursuant to a previous

motion I made to the Court, but I do that only for the record."

The court admitted Exhibit 20 into evidence.

> On cross-examination, Agent Pickett testified:

> COUNSEL: Just so we're clear, you were the second
> Secret Service agent to perform forensic work on
> the laptop, correct?
> AGENT PICKETT: That is correct.  John Murphy was
> the original examiner, and then I re-examined it.
> COUNSEL: Why did you re-examine it?
> AGENT PICKETT: I was asked to.
> COUNSEL: By whom were you asked to?
> AGENT PICKETT: By Attorney Capin.
> COUNSEL: And what was the reason why you were asked
> to?
> AGENT PICKETT: To confirm that everything on John
> Murphy's report was exactly the way he said it was.

> At the end of his testimony, Agent Pickett

testified:

> PROSECUTOR: And just one last question.  You were
> asked a number of questions about the original
> agent, I think Murphy, who analyzed this.  Do you
> know why Murphy isn't here today?
> AGENT PICKETT: That is correct.  John Murphy has,
> as part of our normal career transition, has gone
> on to Washington, D.C.  He's now part of what's
> called our technical security division.  He's in
> charge of the alarms and electronic security at the
> White House.

## B.  Standard of Review

Because Soto did not raise a contemporaneous Sixth Amendment objection to Agent Pickett's testimony, we review the district court's admission of Agent Pickett's testimony for plain error.  <u>See</u> Fed. R. Crim. P. 51(b), 52(b); <u>United States</u> v. <u>Mercado</u>, 412 F.3d 243, 247 (1st Cir. 2005).[4]  Thus, on appeal Soto must show:

> "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." <u>Johnson</u> v. <u>United States</u>, 520 U.S. 461, 467 (1997).  If he is able to satisfy all three elements, this court, in its discretion, may "notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." <u>United States</u> v. <u>Borrero-Acevedo</u>, 533 F.3d 11, 15 (1st Cir. 2008).

<u>United States</u> v. <u>Acevedo-Maldonado</u>, 696 F.3d 150, 156 (1st Cir. 2012) (other internal quotations omitted).

## C.  Relevant Law

The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.  In <u>Crawford</u> v. <u>Washington</u>, 541 U.S. 36, 53-54 (2004),

---

[4]  Soto argues on appeal that we should review his Sixth Amendment challenge <u>de novo</u> because Soto's counsel made a general objection during Agent Pickett's testimony to the authenticity of the Exhibit 20 documents.  At trial, Soto's counsel objected to the admission of the documents found on the hard drive "pursuant to a previous motion I made to the Court."  This objection must refer to counsel's pre-trial motion to suppress the laptop as the fruit of an unreasonable search.  Because Soto did not make a contemporaneous Confrontation Clause or even a hearsay objection, we review for plain error.

the Supreme Court held that the Sixth Amendment bars the "admission
of testimonial statements of a witness who did not appear at trial
unless he was unavailable to testify and the declarant had had a
prior opportunity for cross-examination."

> A critical part of the <u>Crawford</u> holding
>
> is the phrase "testimonial statements." Only
> statements of this sort cause the defendant to be a
> "witness" within the meaning of the Confrontation
> Clause. It is the testimonial character of the
> statement that separates it from other hearsay
> that, while subject to traditional limitations upon
> hearsay evidence, is not subject to the
> Confrontation Clause.

<u>Davis</u> v. <u>Washington</u>, 547 U.S. 813, 821 (2006) (internal citation
omitted). As we have previously explained:

> Thus far, the Supreme Court has declined to supply
> "a comprehensive definition of testimonial."
> <u>Crawford</u>, 541 U.S. at 68; <u>see</u> <u>also</u> <u>Davis</u>, 547 U.S.
> at 822. The Court has, however, provided an
> illustrative list of the "core class of
> 'testimonial' statements." <u>Crawford</u>, 541 U.S. at
> 51. It includes (1) "<u>ex parte</u> in-court testimony or
> its functional equivalent — that is, material such
> as affidavits, custodial examinations, prior
> testimony that the defendant was unable to cross-
> examine, or similar pretrial statements that
> declarants would reasonably expect to be used
> prosecutorially," (2) "extrajudicial statements
> . . . contained in formalized testimonial
> materials, such as affidavits, depositions, prior
> testimony, or confessions," and (3) "statements
> that were made under circumstances which would lead
> an objective witness reasonably to believe that the
> statement would be available for use at a later
> trial." <u>Id.</u> at 51-52 (internal quotation marks and
> citation omitted). . . . Mindful of <u>Crawford</u>'s
> bottom line, this court, in determining whether a
> statement is "testimonial," inquires whether "an
> objectively reasonable person in the declarant's
> shoes would understand that the statement would be

-11-

> used in prosecuting the defendant at trial."
> United States v. Earle, 488 F.3d 537, 543 (1st Cir.
> 2007).

United States v. Phoeun Lang, 672 F.3d 17, 22 (1st Cir. 2012).

In Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309-11 (2009), the Supreme Court held that an affidavit reporting the results of the state's drug analysis falls within the "core class of testimonial statements," and the defendant must be afforded his constitutional right to confront the analysts. In Bullcoming v. New Mexico, 131 S. Ct. 2705, 2713 (2011), the Court held that a certified blood alcohol content report can be used against the defendant only if the defendant has the opportunity to confront at trial the analyst who performed, observed, or supervised the forensic examination. The Court explained: "In short, when the State elected to introduce [the analyst's] certification, [the analyst] became a witness Bullcoming had the right to confront." Id. at 2716. The Sixth Amendment was not satisfied by a "surrogate" witness who was familiar with the lab's practices but who had formed no independent opinion concerning the forensic examination results. Id. at 2715-16; see also United States v. Ramos-González, 664 F.3d 1, 5-6 (1st Cir. 2011). "Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation . . . ." Bullcoming, 131 S. Ct. at 2715.

-12-

Finally, in <u>Williams</u> v. <u>Illinois</u>, 132 S. Ct. 2221 (2012), the Supreme Court tackled the constitutionality of allowing an expert witness to discuss a non-testifying expert's statements when the non-testifying expert's statements are not admitted in evidence. Justice Alito, Chief Justice Roberts, Justice Kennedy, and Justice Breyer reasoned that the non-testifying expert's statements could be discussed by the testifying expert because the non-testifying expert's statements were not offered for their truth, but only to explain the assumption on which the testifying expert based her opinion. <u>Id.</u> at 2235-40. In dissent, Justices Kagan, Scalia, Ginsburg, and Sotomayor concluded that the non-testifying expert's statements were being offered for their truth and were testimonial, and thus found a Confrontation Clause violation. <u>Id.</u> at 2268-72 (Kagan, J., dissenting). In a concurring opinion, Justice Thomas agreed that the non-testifying expert's statements were offered for their truth but concluded that they "lacked the requisite 'formality and solemnity' to be considered 'testimonial' for purposes of the Confrontation Clause." <u>Id.</u> at 2255 (Thomas, J., concurring).,

**D. Analysis**

Soto's argument on appeal is that Agent Pickett testified as a surrogate witness and a conduit for Agent Murphy's report in violation of the Confrontation Clause. He also argues that allowing Agent Pickett to testify about Agent Murphy's conclusions

-13-

subverted his right to confront Agent Murphy and unfairly bolstered the Government's evidence by indicating that the forensic results were verified by two agents.

Agent Pickett did not testify as a surrogate witness for Agent Murphy. Bullcoming provides guidance. Bullcoming was pulled over and arrested for driving while intoxicated. At trial, the government introduced into evidence a laboratory report certifying that Bullcoming's blood alcohol content was above the legal limit. The report was authenticated at trial by an analyst who was familiar with the laboratory's testing procedures but otherwise had nothing to do with the test. Bullcoming, 131 S. Ct. at 2709. The Court explained that the testifying analyst provided impermissible "surrogate testimony" because the testifying analyst had no knowledge about the test of Bullcoming's blood alcohol content or the analyst who performed the test. Id. at 2715. "Nor did the State assert that [the testifying analyst] had any 'independent opinion' concerning Bullcoming's BAC." Id. at 2716.[5]

---

[5] In part IV of the Supreme Court's Bullcoming opinion, joined only by Justice Scalia, Justice Ginsburg observed that the state could have avoided a Sixth Amendment violation when it realized that the original scientist was unavailable to testify "by asking [the testifying analyst] to retest the sample, and then testify to the results of his retest rather than to the results of a test he did not conduct or observe." Id. at 2718. Justice Kennedy, with Chief Justice Roberts, Justice Breyer, and Justice Alito, in dissent, concluded that testimony from a knowledgeable lab representative is sufficient under the Sixth Amendment. Id. at 2723 (Kennedy, J., dissenting). Thus, it appears that six justices would find no Sixth Amendment violation when a second analyst retests evidence and testifies at trial about her conclusions about

-14-

Unlike in <u>Bullcoming</u>, Agent Murphy's forensic report was not introduced into evidence through Agent Pickett. Agent Pickett testified about a conclusion he drew from his own independent examination of the hard drive. The government did not need to get Agent Murphy's report into evidence through Agent Pickett. <u>Cf.</u> <u>Bullcoming</u>, 131 S. Ct. at 2716; <u>Ramos-González</u>, 664 F.3d at 6 (finding Sixth Amendment violation where testifying expert recited non-testifying analyst's conclusion that substance contained cocaine and provided no independent opinion about nature of substance). We do not interpret <u>Bullcoming</u> to mean that the agent who testifies against the defendant cannot know about another agent's prior examination or that agent's results when he conducts his examination. The government may ask an agent to replicate a forensic examination if the agent who did the initial examination is unable to testify at trial, so long as the agent who testifies conducts an independent examination and testifies to his own results.

Soto's argument that Agent Murphy's report bolstered Agent Pickett's testimony hits closer to the mark. At trial, Agent Pickett testified that the incriminating documents in Exhibit 20 were found on a laptop that was seized from Soto's car. Although Agent Pickett had independent knowledge of that fact, he testified that "everything that was in John Murphy's report was exactly the

<hr>

her independent examination.

-15-

way he said it was," and that Exhibit 20 "was contained in the same folder that John Murphy had said that he had found it in." "[I]f what the jury hears is, in substance, an untested, out-of-court accusation against the defendant . . . the defendant's Sixth Amendment right to confront the declarant is triggered." United States v. Meises, 645 F.3d 5, 21 (1st Cir. 2011). These two out-of-court statements attributed to Agent Murphy were arguably testimonial and offered for their truth. Agent Pickett testified about the substance of Agent Murphy's report which Agent Murphy prepared for use in Soto's trial. Agent Murphy's conclusion in his report, which Agent Pickett repeated, was offered to show that the Exhibit 20 documents were located on the hard drive of the laptop seized from Soto's vehicle. Agent Pickett's testimony about Agent Murphy's prior examination of the hard drive bolstered Agent Pickett's independent conclusion that the Exhibit 20 documents were found on Soto's hard drive.

But this Confrontation Clause violation was not plain error. Had counsel for Soto made a contemporaneous Sixth Amendment objection or objected to Agent Murphy's absence, the trial court could have given a curative instruction, or the government could have produced Agent Murphy to testify. See Ramos-González, 664 F.3d at 4 (objection to absence of chemist who performed drug analysis sufficient to raise Confrontation Clause issue). Furthermore, Agent Murphy's out-of-court testimonial statements

linking Soto to the Exhibit 20 documents were entirely cumulative of Agent Pickett's in-court testimony regarding his own independent examination. The admission of Agent Pickett's statements about the conclusions in Agent Murphy's report did not affect Soto's substantial rights. We conclude that there was no plain error.

### Conclusion

For the reasons discussed above, we affirm Soto's convictions on all counts.

**Affirmed**.